1  John N. Zarian (SBN 145080)
   ZARIAN MIDGLEY & JOHNSON PLLC
2  University Plaza
   960 Broadway Ave., Ste. 250
3  Boise, Idaho 83706
   Telephone: (208) 562-4900
4  Facsimile: (208) 562-4901
   E-Mail: zarian@zarianmidgley.com

5  Mira S. Wolff (SBN 161672)
   NEWEGG, INC.
6  16839 E. Gale Avenue
   City of Industry, CA 91745
7  Telephone: (626) 271-9700, x. 22032
   Facsimile: (626) 271-9483
8  E-Mail: Mira.S.Wolff@newegg.com

9  Attorneys for Plaintiff
   NEWEGG INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CV 09 0982

| | |
|---|---|
| NEWEGG INC., a Delaware corporation, | Case No. |
| Plaintiff, | **COMPLAINT FOR DECLARATORY AND OTHER RELIEF** |
| v. | **JURY TRIAL DEMANDED** |
| TELECOMMUNICATION SYSTEMS, INC., a Maryland corporation, | |
| Defendant. | |

Newegg Inc., a Delaware corporation ("Newegg" or "Plaintiff"), files this complaint against defendant TeleCommunication Systems, Inc. ("TCS" or "Defendant") and alleges as follows:

COMPLAINT FOR DECLARATORY AND OTHER RELIEF; DEMAND FOR JURY TRIAL         1

## THE PARTIES

1. Plaintiff NEWEGG INC. is a Delaware corporation and has its principal place of business located at 16839 E. Gale Avenue, City of Industry, California 91745.

2. Plaintiff is a leading e-commerce company offering products to consumers through an unsurpassed shopping experience, rapid delivery, and stellar customer service.

3. Defendant TELECOMMUNICATION SYSTEMS, INC. is a corporation organized under the laws of the state of Maryland. Defendant maintains a principal, regular and established place of business located at 300 Lakeside Dr., Suite 1045, Oakland, California 94612.

4. Defendant is a provider of wireless data solutions. It has been a public company since the autumn of 2000 and is traded on the NASDAQ as TSYS.

5. On information and belief, TCS has about 600 employees, many of them based in Oakland, and Defendant regularly sells products in California and within this judicial district.

## JURISDICTION AND VENUE

6. This is an action for a declaratory judgment of patent non-infringement and invalidity. Jurisdiction over this action arises under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. There is a justiciable controversy within the meaning of 28 U.S.C. §§ 2201 and 2202 between Plaintiff, on the one hand, and Defendant, on the other hand, regarding whether U.S. Patent No. 6,891,811 ("the '811 Patent") issued to Smith et al. on May 10, 2005, and whether U.S. Patent No. 7,355,990 ("the '990 Patent) issued to Smith et al. on April 8, 2008 are valid, enforceable and infringed.

7. Jurisdiction over this action also arises under the patent laws of the United States, Title 35, United States Code, and pursuant to the provisions of 28 U.S.C. §§ 1331 and 1338.

8. On information and belief, venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400.

## INTRADISTRICT ASSIGNMENT

9. This is an Intellectual Property Action and shall therefore be assigned on a district wide basis in accordance with Local Rule 3-2(c). Convenience considerations would favor assignment to the San Francisco/Oakland Division as Defendant maintains a principal, regular

and established place of business located at 300 Lakeside Dr., Suite 1045, Oakland, California 94612.

## ALLEGATIONS

10. In correspondence dated January 12, 2009 and transmitted to California, Defendant has accused Plaintiff of infringing U.S. Patent No. 6,891,811 (the '811 Patent) and U.S. Patent No. 7,355,990 (the '990 Patent), based on Plaintiff's alleged "use of MO-to-application SMS short codes," including the alleged "use of the short code 639344." (A true and correct copy of the foregoing letter is attached hereto as Exhibit 1.)

11. In the foregoing letter, Defendant claimed that Newegg had engaged and engages in the "unauthorized" use of "one or more gateways that place mobile-originated (MO) text messages into HTTP protocol messages to web-based APIs," as allegedly prohibited by 35 U.S.C. § 271 (a) by virtue of the claims of the '811 and '990 Patents. The letter included a detailed claim chart allegedly showing an "element-by-element application of the claims" to Plaintiff's use.

12. In the letter, Defendant went on to state that Plaintiff could abate its alleged "infringement" of the '811 and '990 Patents by negotiating a license agreement and paying royalties to Defendant. Thus, the letter suggested that, absent a license agreement or other consent from Defendant, Plaintiff's liability for alleged patent infringement is increasing each and every day.

13. Under the circumstances, there is a substantial controversy between the parties, having adverse legal interests, and of sufficient immediacy and reality, to warrant the issuance of a declaratory judgment.

## COUNT I

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT ('811 PATENT)

14. Plaintiff re-alleges and incorporates by reference, as though fully set forth herein, the allegations contained in paragraphs 1 through 13, inclusive.

15. Plaintiff contends that its conduct does not infringe, directly or indirectly, any valid and enforceable claim of the '811 Patent, nor does Plaintiff manufacture, use, sell, import or offer for sale any product or service that infringes a valid and enforceable claim of the '811 Patent.

16. On the other hand, Defendant contends that one or more of the independent claims of the '811 Patent, including Claim 1, covers Plaintiff's conduct.

17. A justiciable controversy therefore has arisen and now exists between Plaintiff and Defendant, and Plaintiff thereon requests that the court issue a judgment establishing the rights and relations between the parties by declaring that Plaintiff does not manufacture, use, sell, import, or offer for sale any product that infringes any valid and enforceable claim of the '811 Patent.

## COUNT II

### (DECLARATORY JUDGMENT OF INVALIDITY ('811 PATENT))

18. Plaintiff re-alleges and incorporates by reference, as though fully set forth herein, the allegations contained in paragraphs 1 through 17, inclusive.

19. Plaintiff contends that some or all of the claims of the '811 Patent are invalid for failure to comply with the requirements of 35 U.S.C. §§ 101, 102, 103 and/or 112. For example, U.S. Patent No. 6,654,786 discloses a translation module that can communicate between wireless devices and internet devices, including SMS and HTTP protocols.

20. Furthermore, the SMS Text message at issue is intangible and the translation device at issue is, at best, a generic device that could be embodied by any hardware with a processor. Accordingly, some or all of the claims of the '811 Patent are invalid for claiming nonstatutory subject matter under 35 U.S.C. § 101.

21. On the other hand, Defendant contends that one or more of the claims of the '811 Patent, including Claim 1, are valid as issued by the United States Patent and Trademark Office, and that Plaintiff is therefore required to cease and desist the manufacture, use, sale, and offering for sale of certain products or services.

22. A justiciable controversy therefore has arisen and now exists between Plaintiff and Defendant, and Plaintiff thereon requests that the court issue a judgment establishing the rights and relations between the parties by declaring that some or all of the claims of the '811 Patent are invalid for failing to comply with the requirements of 35 U.S.C. §§ 102, 103 and/or 112.

## COUNT III

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT ('990 PATENT)

23. Plaintiff re-alleges and incorporates by reference, as though fully set forth herein, the allegations contained in paragraphs 1 through 22, inclusive.

24. Plaintiff contends that its conduct does not infringe, directly or indirectly, any valid and enforceable claim of the '990 Patent, nor does Plaintiff manufacture, use, sell, import, or offer for sale any product or service that infringes a valid and enforceable claim of the '990 Patent.

25. On the other hand, Defendant contends that one or more of the independent claims of the '990 Patent, including Claim 1, covers Plaintiff's conduct.

26. A justiciable controversy therefore has arisen and now exists between Plaintiff and Defendant, and Plaintiff thereon requests that the court issue a judgment establishing the rights and relations between the parties by declaring that Plaintiff does not manufacture, use, sell, import, or offer for sale any product that infringes any valid and enforceable claim of the '990 Patent.

## COUNT IV

## (DECLARATORY JUDGMENT OF INVALIDITY ('990 PATENT)

27. Plaintiff re-alleges and incorporates by reference, as though fully set forth herein, the allegations contained in paragraphs 1 through 26, inclusive.

28. Plaintiff contends that some or all of the claims of the '990 Patent are invalid for failure to comply with the requirements of 35 U.S.C. §§ 101, 102, 103 and/or 112. For example, U.S. Patent No. 6,654,786 discloses a translation module that can communicate between wireless devices and internet devices, including SMS and HTTP protocols.

29. Furthermore, the SMS Text message at issue is intangible and the translation device at issue is, at best, a generic device that could be embodied by any hardware with a processor. Accordingly, some or all of the claims of the '990 Patent are invalid for claiming nonstatutory subject matter under 35 U.S.C. § 101.

30. On the other hand, Defendant contends that one or more of the claims of the '990 Patent, including Claim 1, are valid as issued by the United States Patent and Trademark Office,

and that Plaintiff is therefore required to cease and desist the manufacture, use, sale, and offering for sale of certain products or services.

31. A justiciable controversy therefore has arisen and now exists between Plaintiff and Defendant, and Plaintiff thereon requests that the court issue a judgment establishing the rights and relations between the parties by declaring that some or all of the claims of the '990 Patent are invalid for failing to comply with the requirements of 35 U.S.C. §§ 101, 102, 103 and/or 112.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for the following relief:

1. For a judgment declaring that:
   a. Plaintiff does not manufacture, use, sell, import, or offer for sale any product or service that infringes, either directly or indirectly, any valid and enforceable claim of the '811 Patent.
   b. Some or all of the claims of the '811 Patent are invalid for failing to comply with the requirements of 35 U.S.C. §§ 101, 102, 103 and/or 112;
   c. Plaintiff does not manufacture, use, sell, import, or offer for sale any product or service that infringes, either directly or indirectly, any valid and enforceable claim of the '990 Patent.
   d. Some or all of the claims of the '990 Patent are invalid for failing to comply with the requirements of 35 U.S.C. §§ 101, 102, 103 and/or 112;
   d. Plaintiff shall be awarded its costs and attorneys' fees in connection with this action, and such other and further relief as the court may deem appropriate; and,
   e. This case is exceptional under 35 U.S.C. § 285;
2. Damages according to proof;
3. Plaintiff's Costs and Attorneys' Fees according to proof; and
4. For such further relief as the court may deem just and reasonable.

1 | DATED: MARCH 4, 2009

ZARIAN MIDGLEY & JOHNSON PLLC

*[signature]*
John N. Zarian

Attorneys for Plaintiff
NEWEGG INC.

COMPLAINT FOR DECLARATORY AND OTHER RELIEF; DEMAND FOR JURY TRIAL 7

# JURY DEMAND

Plaintiff respectfully demands a trial by jury.

DATED: MARCH 4, 2009

ZARIAN MIDGLEY & JOHNSON PLLC

_____
John N. Zarian

Attorneys for Plaintiff
NEWEGG INC.

# Exhibit 1

# Flachsbart & Greenspoon, LLC

· The Monadnock Building · 53 W Jackson Blvd. Suite 652 · Chicago IL 60604-3459 ·
· Tel 312-431-3800 · Fax 312-431-3810 · www.fg-law.com ·

January 12, 2009

RECEIVED
JAN 1 9 2009
By _____

Newegg, Inc.
Attn: Mr. Lee Cheng
General Counsel
16839 E. Gale Avenue
City of Industry, CA 91745

### Re: Infringement of Patent Nos. 6,891,811 and 7,355,990, and License Offer

Dear Mr. Cheng:

Newegg, Inc. infringes United States Patent Nos. 6,891,811 and 7,355,990 (copies enclosed) based on its use of MO-to-application SMS short codes. The instances of infringement we have found include Newegg, Inc.'s use of the short code 639344. We write on behalf of the patent owner, TeleCommunication Systems, Inc. (TCS), to explain the infringement and offer favorable licensing terms for Newegg, Inc. to continue using the '811 and '990 patents.

## TCS

TeleCommunication Systems, Inc. is a publicly held company that develops and applies wireless data communications technology in the United States and internationally. It focuses on text messaging and location-based services, including enhanced 9-1-1 for wireless carriers and voice over Internet protocol (VoIP) service providers, and secure satellite-based communication solutions for government customers.

TCS is widely known as an innovator in the wireless messaging field. As of October 8, 2008, TCS holds 65 patents, with 199 applications pending. TCS has aggressively protected its patent rights in the past, including winning a jury verdict of patent infringement against Sybase 365 in 2007 in the Eastern District of Virginia to remedy infringement of one of TCS's intercarrier messaging patents.

## The '811 and '990 Patents

Richard A. Smith and Johanna Wilson invented the '811 and '990 patents while working at TCS. These patents disclose a way for companies to let individuals send SMS text messages to Internet-connected computer applications, and receive messages back from those applications in return. While this technology is commonplace and in

widespread use today, Smith and Wilson's innovative efforts first brought this technology into existence many years ago, as reflected by the April 2000 priority dates of the patents.

In 2000, the inventors noted the need for a solution that allowed short message communications "between wireless devices and application servers on the Internet without the need for a specialized browser," the patent specifications describe the invention as allowing "any standard 2-way SMS capable handset to interact with specialized web applications." '811 patent at 4:41-47, 5:43-48.

The inventions accomplish this through creation of a "gateway" between the existing SMSC and the web application. '811 patent at cols. 5-7. The preferred embodiment's gateway (called the "mobile to HTTP Gateway," or "MHG" in the patent) "generates HTTP protocol POST commands to an application program on a relevant IP server 152-156 based on mobile-originated messages, and translates responses to the same from HTTP protocol back into standard format SMPP messages for forwarding back to the relevant mobile device 120." '811 patent at 6:46-52. Put another way, the MHG described in the patents takes the message content from the original SMS text and puts it into a URL addressed to the destination server that is registered to correspond with the outgoing SMS address. '811 patent at cols. 8-9. The cover figure (Figure 1) shows the overall architecture graphically:



The bottom line is this. The recipient of a mobile originated (MO) message no longer has to be another wireless device (such as MOBILE 120), but may instead be one or more application servers accessible over the Internet (e.g., IP SERVER 152, 154 and 156).

In short, the inventions allow mobile originated messages (MO) to communicate with web applications. The '811 and '990 Patents currently have a continuation pending in the U S. Patent and Trademark Office.

### The Infringement

Our investigation concluded that Newegg, Inc. uses the short code 639344 to connect consumers to web-connected applications. Thus, Newegg, Inc. uses one or more

Mr. Lee Cheng
January 12, 2009
Page 3 of 5

gateways that place mobile-originated (MO) text messages into HTTP protocol messages to web-based APIs. To be more specific, Newegg, Inc. works with an aggregator and/or an application provider that employs the gateway of claim 1 of the respective patents. Since 35 U.S.C. § 271(a) prohibits the unauthorized use of the gateway of claim 1, and since Newegg, Inc. has used such a gateway so far without a license, Newegg, Inc. infringes. This claim chart shows an element-by-element application of the claims to Newegg, Inc.'s use:

| U.S. Patent No 6,891,811 | Aggregator / Application Provider technology used by Newegg, Inc. |
|---|---|
| 1. A gateway, comprising: | Newegg, Inc. employs an Aggregator and/or an Application Provider to use gateway devices, as described below. |
| a first communication path to accept a short message from a short message service center; | Gateways used by Newegg, Inc. have an incoming ("first") communication path for text messages, a route feeding messages in from the SMSC's. |
| a translation module to insert said short message into an HTTP protocol message; and | Gateways used by Newegg, Inc. have software and/or hardware which translates the message content of incoming texts into HTTP messages. |
| a second communication path to transmit said HTTP protocol message to at least one URL; | Gateways used by Newegg, Inc. have an outbound ("second") communication path for transmitting such HTTP messages to at least one URL. |
| wherein said gateway facilitates two-way short message service communication between a short message service device and an HTTP device. | Gateways used by Newegg, Inc. are two-way capable. They send return messages to subscriber devices. |
| | |
| U.S. Patent No. 7,355,990 | Aggregator / Application Provider technology used by Newegg, Inc. |
| 1. A gateway, comprising: | Newegg, Inc. employs an Aggregator and/or Application Provider to use gateway devices, as described below. |
| a first communication path to accept a short message from a mobile device; | Gateways used by Newegg, Inc. have an incoming ("first") communication path for text messages, a route feeding messages in from the SMSC's. |
| a translation module to insert said short message into an Hypertext Transfer | Gateways used by Newegg, Inc. have software and/or hardware which translates |

Mr. Lee Cheng
January 12, 2009
Page 4 of 5

| Protocol (HTTP) message; | the message content of incoming texts into HTTP messages. |
|---|---|
| a second communication path to push said HTTP message to at least one Universal Resource Locator (URL); and | Gateways used by Newegg, Inc. have an outbound ("second") communication path for pushing such HTTP messages to at least one URL. |
| a return communication path to receive a return message relating to said HTTP message. | Gateways used by Newegg, Inc. are two-way capable. They have a return path to send return messages to subscriber devices. |

### Offered License Terms

TCS has established a reasonable royalty rate that takes into account the high value of its intellectual property to brand companies and the like, balanced against the need to price these license rights in line with corporate promotional budgets. TCS is not, at this time, asking Newegg, Inc. to cease and desist using MO-to-application short codes. Instead, TCS would prefer to come to terms that will allow Newegg, Inc. to continue to use such short codes (and their associated gateways) with express authorization and under a license by TCS. These terms are based on the easily measurable extent of use of the invention, and the type of use (premium short codes or not). Royalty amounts begin at a $5,000 payment for a three-year term license, and go up from there. The royalty schedule is as follows, per short code:

| Yearly Volume of Messages | Non-Premium Three Year Term License | Premium Three Year Term License |
|---|---|---|
| < 100k | $5,000 | $10,000 |
| 100k - 1M | $20,000 | $40,000 |
| 1M-5M | $50,000 | $100,000 |
| 5M+ | $100,000 | $200,000 |

Please note that each short code registration requires an additional license. Please also note that fully paid-up licenses for unlimited registrations and usage are also available if desired, at prices subject to negotiation.

As soon as Newegg, Inc. expresses an interest in abating its infringement through payment of royalties, we will send you a draft license agreement. TCS will then allow Newegg, Inc. to make an initial indication of which licensing tier applies to each particular short code. If the selected tier is below the 5 million yearly messages level, TCS will retain audit rights to confirm the accuracy of the selection at the end of the three-year license term.

Mr. Lee Cheng
January 12, 2009
Page 5 of 5

    On behalf of TCS, we thank you for your kind attention to this matter. If you have any questions, please do not hesitate to contact us. We look forwarding to working with you.

                Sincerely,

                William W. Flachsbart