John N. Zarian (SBN 145080)
ZARIAN MIDGLEY & JOHNSON PLLC
University Plaza
960 Broadway Ave., Ste. 250
Boise, Idaho 83706
Telephone:  (208) 562-4900
Facsimile:  (208) 562-4901
E-Mail:  zarian@zarianmidgley.com

Mira S. Wolff (SBN 161672)
NEWEGG INC.
16839 E. Gale Avenue
City of Industry, CA  91745
Telephone:  (626) 271-9700, x. 22032
Facsimile:  (626) 271-9483
E-Mail:  Mira.S.Wolff@newegg.com

Attorneys for Plaintiff
NEWEGG INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEWEGG INC., a Delaware corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>TELECOMMUNICATION SYSTEMS, INC., a Maryland corporation,<br><br>　　　　　Defendant. | Case No.  C 09 0982 JL<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE TO BALTIMORE, MARYLAND**<br><br>**Hearing Date:  May 20, 2009**<br>**Hearing Time: 9:30 a.m.**<br>**Location:  Courtroom F, 15th Floor**<br>**Judge: Magistrate Judge James Larson** |

Plaintiff and counter-defendant Newegg Inc. ("Newegg"), by and through its attorneys of record, respectfully submits the instant memorandum of points and authorities in opposition to the pending Motion to Transfer Venue (the "Motion") filed by defendant and counter-complainant TeleCommunications Systems, Inc. ("TCS").  Concurrently herewith, Newegg also submits the accompanying declarations of Mira S. Wolff, John N. Zarian, and Scott D. Delacourt.

## I.  INTRODUCTION

The pending Motion should be denied because TCS has failed to make the strong showing of inconvenience required to justify upsetting Newegg's choice of forum.  At best, a transfer to Baltimore, Maryland would merely shift inconvenience from one party to another.  Surely, it is not inconvenient for TCS (a sophisticated litigant) to litigate in a forum in which it maintains a substantial office and has done business on continuous, systematic basis for as many as 10 years or more.  Further, the key evidence and witnesses are all located in California, and all of the unaffiliated third parties either *favor* this venue or are known to be located elsewhere in California (in the Central District).  Under the circumstances, as shown below, none of the factors favor transfer to the District of Maryland – which is *not* more efficient and which (unlike this Court) lacks a set of patent local rules.

## II.  STATEMENT OF FACTS

### A.  Nature of the Dispute

1.   In correspondence dated January 12, 2009, TCS accused Newegg of infringing U.S. Patent No. 6,891,811 (the '811 Patent) and U.S. Patent No. 7,355,990 (the '990 Patent), based on Plaintiff's alleged "use of MO-to-application SMS short codes."  [*See* Dkt. 1, Exh. 1.]  Evidently, this demand was part of a wide net cast by TCS seeking royalties from companies around the country.

2.   The foregoing letter claimed that Newegg was engaging in the "unauthorized" use of "one or more gateways that place mobile-originated (MO) text messages into HTTP protocol messages to web-based APIs."  [*Id*. (including claim chart allegedly showing an "element-by-element application of the claims").]  The letter suggested that absent a license agreement – and the payment of as much as $200,000 to TCS every three years – Newegg's alleged liability would be increasing every day.  [*Id*.]

3.   On March 4, 2009, Newegg commenced this action, seeking declaratory judgments of non-infringement and invalidity with respect to the '811 and '990 Patents.  [Dkt. 1.]  On April 14, 2009, TCS filed an answer and counterclaim for patent infringement of the patents in suit.  [Dkt. 5.]

1

4. In addition, TCS filed a motion to transfer venue under 28 U.S.C. §1404(a). [Dkt. 6.]

**B. Background Concerning Newegg**

5. Newegg is an e-commerce company and an online-only retailer of computer hardware and peripherals. Newegg does not have any stores and does not service any customers in person. (Declaration of Mira S. Wolff (hereinafter "Wolff Decl."), ¶4.) It is undisputed that Newegg does not maintain any offices and does not have any employees in Maryland. (*See id.*, ¶6.)

6. In fact, Newegg is headquartered, and maintains its principal place of business, in California, in City of Industry. (Wolff Decl. ¶5.) Newegg has approximately 950 employees in the United States, and the overwhelming majority of them live and work in California. (*Id.*, ¶¶14, 5.)

7. TCS has not made any showing that Newegg is subject to personal jurisdiction in Maryland, or that venue would have been proper if TCS had filed suit in Maryland. [*See* Dkt. 6 at 9.]

**C. Background Concerning TCS**

8. TCS is a provider of wireless data solutions. It has been a public company since 2000 and is traded on the NASDAQ as TSYS. (*See* Declaration of John N. Zarian (hereinafter "Zarian Decl."), Ex. 2.) During 2008, TCS earned total revenue of $211.5 million. [*Id.*, Ex. 1.]

9. TCS has approximately 600 employees, based primarily in Annapolis, Oakland, Seattle and Tampa. (*Id.*) The company touts a "growing portfolio of some 65 patents, with more than 200 patent applications pending." (*Id.*, Ex. 2) TCS also boasts that it "aggressively" enforces its patent rights, including litigation recently concluded in the Eastern District of Virginia. [Dkt. 1, Ex. 1.]

**D. TCS' Extensive Contacts with California and this Judicial District**

10. TCS claims to maintain a principal executive office in Annapolis, Maryland. (Zarian Decl., Ex. 1, at 27.) In addition, TCS leases facilities and maintain offices in Oakland, California; Seattle, Washington; Tampa, Florida; and Phoenix, Arizona. (*Id.*, at 27-28.)

11. According to the California Secretary of State, TCS has been doing business in California since 1998, before either of the patents in suit issued. (*See* Zarian Decl., Ex. 7.)

12. Presently, TCS leases an "11,000 square foot facility" in Oakland, California (*Id.*) Although TCS only admitted "about 20 employees" to this Court [Dkt. 5, ¶5], Dun & Bradstreet estimates that TCS employs 28 persons in its Oakland office. (*See* Zarian Decl., Ex. 4.)

13. Evidently, TCS is actively recruiting to hire more employees in Oakland. (Zarian Decl., Ex. 6 (job posting for "Principal Computer Software Engineer").)

14. Even as of 2004, when the assets initially forming the Oakland office were acquired by TCS – and before one of the two patents in suit issued – the predecessor company of TCS Oakland (Kivera, Inc.) was already generating an estimated $5 million in annual revenue. (*Id*., Ex. 5.)

15. Significantly, TCS has not challenged this Court's personal or subject matter jurisdiction, and TCS *admits* that venue is proper in this district. [*See* Dkt. 5, ¶8.]

### E. TCS is a Highly Sophisticated Litigant

16. TCS is a sophisticated litigant and has litigated matters throughout the country.

17. For example, since 2001, TCS has been defending a shareholder class action filed in the Southern District of New York. (Zarian Decl., Ex. 1, at 28.)

18. Between 2006 and 2008, TCS litigated a patent infringement case – to a jury verdict and final judgment (now on appeal) – against Mobile 365 in the Eastern District of Virginia. (*Id*.)

19. Recently, on August 1, 2008, TCS filed a miscellaneous action and *ex parte* application in the Eastern Distict of California, through counsel located in Los Angeles (in the Central District of California), requesting that the court take jurisdiction from the Eastern District of Texas with respect to certain subpoenas served on TCS. (Zarian Decl., Ex. 8.) In that regard, TCS argued that the exercise of jurisdiction by the court in California would *facilitate* the taking of discovery and prompt responses to subpoenas from TCS. (*Id*., at 3, 7.)

20. On a prior occasion, however, TCS fought to transfer venue of an action from the Eastern District of Wisconsin to the District of Maryland. (Zarian Decl., Ex. 9, at 8-16.) In that motion, filed in 2005, TCS argued that an employee living in Wisconsin should be required to sue the company in Baltimore, Maryland, because that venue was "more convenient" for TCS. (*Id*.)

21. As noted above, TCS is aggressively expanding its patent portfolio, with 200 patent applications or more now pending. (Zarian Decl., Ex. 2.) Evidently, TCS is also committed to a concerted campaign of demanding patent royalties from companies around the country, including companies in California. [*See, e.g*., Dkt. 1, Ex. 1.]

\ \ \

**F. The Party Witnesses and Documents Identified by Newegg**

22. Evidently, the patents in suit involve technology relating to mobile devices and a "gateway" between SMSC commands and a web IP server. TCS claims that Newegg "works with an aggregator and/or an application provider" that employs such a "gateway." [Dkt. 1, Ex. 1.]

23. However, it is undisputed that substantially all of Newegg's physical hardware, routing devices, web applications, systems and servers are located in *California*. (Wolff Decl., ¶9.) Newegg does not maintain any equipment or contract with any application providers in Maryland. (*Id*.)

24. Furthermore, substantially all of the documents relating to any text messaging or location-based services involving Newegg are located in California. (*Id*., ¶10.) Newegg does not maintain any documents in Maryland that are related to any such technologies or its products. (*Id*.)

25. Based on the information currently available, Newegg *expects* to call certain of its own employees as witnesses in this matter. All of these employees live and work in California, including James Wu (Chief Technology Officer), Michael M. Amkreutv (V.P. Product Management), and Bernard Luthi (V.P. Merchandising). (*Id*., ¶12.) A trial in Baltimore, Maryland would be extremely disruptive for these employees, compared to a trial in the Northern District of California. (*Id*., ¶13.)

**G. The Party Witnesses Identified by TCS**

26. According to TCS, the central issues in this case will be (a) infringement by Newegg, (b) damages for any such infringement, and, (c) validity of the two patents in suit. [Dkt. 6, at 4.]

27. On the foregoing basis, TCS has represented that it *may* call as witnesses "one or more" of six current employees who on issues related to their "witnessing the conception" and participating in unspecified "messaging development efforts" back in 2000. [Dkt. 6, at 6.] TCS does not explain why the duplicative testimony of six employees is allegedly necessary to establish proper witnessing.

28. In fact, at this point, there is no indication that the conception of these inventions is in any way an issue in this litigation. [*See* Dkt. 1, at 4-6 (alleging that the patents in suit are invalid because they fail to comply with 35 U.S.C. §§ 101, 102, 103 and/or 112).]

**H. Non-Party Witnesses Identified by the Parties**

29. TCS claims that it may call employees of the Mobile Marketing Association ("MMA") as witnesses to testify on "issues of damages" at any trial. [Dkt. 6, at 5-6.] TCS argues that the Northern District of California would be a far more inconvenient forum for these MMA employees.

4

30. However, the MMA's outside general counsel has supplied a declaration representing that the Northern District of California is neither inconvenient nor objectionable to the MMA's employees and members (including many members in California), who do *not* prefer the District of Maryland as a venue. (Declaration of Scott D. Delacourt (hereinafter "Delacourt Decl."), ¶¶5-8.)

31. TCS also claims that it may call employees of a company called 360 Degree Mobile as witnesses at trial. [*See* Dkt. 6, at 6.]

32. However, as TCS concedes, 360 Degree Mobile is located in Westlake Village, California (Central District). [*Id.*] Clearly, transferring this action from the Northern District of California to Baltimore, Maryland would not serve the interests of these witnesses.

33. Finally, TCS identifies the two inventors (former TCS employees) and the patent attorney involved in prosecuting these patents as "third party" witnesses who "might be unwilling or unable" to testify in Northern California because it would be "far more convenient" to drive to Baltimore instead. [Dkt. 6, at 5; Dkt. 7, ¶¶5-6.]

34. The foregoing representations by TCS are as ambiguous (*i.e.,* "might be unwilling or unable"*) as they are remarkable (*i.e.,* by suggesting that the inventors and prosecuting patent attorney involved would be *unwilling* to testify at trial in this California patent case, even as the patents in suit are the subject of aggressive efforts to extract royalties from companies located in California).[1]

**I.   The Judicial Districts Involved**

35. TCS suggests that the District of Maryland is a more efficient forum for this dispute. [*See, e.g.,* Dkt. 6, at 7 (for period ended September 30, median time from filing to trial was 22 months in the District of Maryland and 30 months in the Northern District of California).] However, it appears that TCS' argument is undermined altogether by looking at a slightly different time period. (*See* Zarian Decl., Ex. 10 (for year ended March 31, 2008, median time from filing to trial is 24.5 months in the District of Maryland and 25.5 months in the Northern District of California).)

---

[1] The representations in the Declaration of Elliott Friedman concerning statements attributed to inventors Richard A. Smith and Johanna Wilson and patent attorney William Bollman are, in any event, objectionable hearsay. [Dkt. 7, ¶¶5-6.] The exceedingly vague and ambiguous content of these alleged statements further detracts from their reliability, and provides further grounds upon which to sustain Newegg's evidentiary objection.

5

*Plaintiff's Opposition to Defendant's Motion to Transfer Venue*
Case No.: C 09 0982 JL

36.     In any event, in stark contrast to the Northern District of California, the District of Maryland has not adopted any Patent Local Rules. (*Id*., Ex. 11.)

## III. BALANCING THE RELEVANT FACTORS UNDER 28 U.S.C. §1404(a) SHOWS THAT A TRANSFER TO BALTIMORE, MARYLAND IS NOT WARRANTED.

### A. Transfer Under Section 1404(a) is Justified Only in Rare Cases.

A court may, "[f]or the convenience of the parties and witnesses, in the interest of justice, . . . transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. §1404(a). However, the defendant has the burden of making a "strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986); *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979); *In re National Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003). Courts generally will not order a transfer unless the "convenience" and "justice" factors strongly favor venue elsewhere. *Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985); *Mason v. SmithKline Beecham Clinical Labs.*, 146 F. Supp. 2d 1355, 1359 (S.D. Fla. 2001) (holding defendant must show factor balancing "*strongly favors* the defendant") (emphasis in original).

As the U.S. Supreme Court has stated, transfer is justified only in "rather rare cases." *Gulf Oil Corp v. Gilbert*, 330 U.S. 501, 509 (1947). Moreover, "[s]ection 1404(a) provides for transfer to a more convenient forum, *not to a forum likely to prove equally convenient or inconvenient*." *Van Dusen v. Barrack*, 376 U.S. 612, 645-46 (1964) (emphasis added). Moreover, if transfer would merely shift inconvenience from one party to the other, the motion should be denied. *See Robinson v. Giamarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996).

### B. A Balance of the Convenience Factors Does Not Favor Transfer to Baltimore, Maryland.

Under the Section 1404(a) analysis, the Court considers several factors to determine whether transfer is warranted, including: (1) the plaintiff's initial choice of forum; (2) convenience of the parties; (3) convenience of the witnesses and their availability through compulsory process; (4) location of documents and other sources of proof; (5) relative ability of the parties to bear the expense of the forum change; and (6) trial efficiency and expense to the judicial system. *In re Volkswagen of*

6

*America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc).  For the reasons set forth below, an application of these factors does not favor transfer of this action to Baltimore, Maryland.

### 1. Plaintiff's Choice of Forum Weighs Heavily Against Transfer.

A plaintiff's choice of forum is generally accorded substantial weight in proceedings under Section 1404(a).  *See Vigman*, 764 F.2d at 1317; *Lewis v. ACB Business Services, Inc.*, 135 F.3d 662, 665 (6th Cir. 1998).  As such, this factor weighs heavily against any transfer of this action.

Of course, TCS has argued that, because Newegg does not reside within the Northern District of California (but rather in the *Central* District of California), the Court should afford Newegg's choice of forum "minimal" deference. [Dk. 6, at 8.]  As support for this argument, TCS cites cases that hold, in essence, that a plaintiff's choice of forum is entitled to less weight when the forum chosen by the plaintiff is not connected with the parties ***or*** the subject matter of the lawsuit.  *E.g.*, *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968) (noting that consideration should be given to the extent of defendant's business contacts with chosen forum, including those not relating to the case).

However, this argument fails here because the Northern District of California has a connection to this action and because TCS' contacts with this judicial district are *extensive*.  Not only is TCS registered to do business in California (since 1998), but TCS maintains a substantial (and growing) business presence in Oakland, including substantial office space, personnel and sales.[2]

Under the circumstances, Newegg cannot be charged with forum shopping; if anything, Newegg filed in the Northern District of California because it was a more convenient forum *for TCS*.[3]

Thus, Newegg's choice of forum is entitled to considerable deference or, at the very least, this factor still weighs against transfer.  *Everprest, Inc. v. Phillips-Van Heusen, Corp*, 300 F. Supp. 757,

---

[2]  Again, TCS has not challenged this Court's personal or subject matter jurisdiction, and TCS *admits* that venue is proper in this judicial district.  [*See* Dkt. 5, ¶8.]

[3] Newegg submits that, if a transfer were to be made from the Northern District of California – its first choice of forum – then any such transfer should be made to the Central District of California, not the District of Maryland.  Applying the relevant factors, Southern California is clearly more convenient to the parties and witnesses than Baltimore, Maryland.

759 (M.D. Ala. 1969) (holding that a non-resident plaintiff's choice of forum was still entitled to deference in a patent case where the defendant's principal place of business was also elsewhere).[4]

\ \ \

### 2. The Convenience of the Parties Favors This Forum.

Surely, it is not inconvenient for a corporate defendant (like TCS) to litigate in a forum (like this district) in which that defendant has done business on a continuous, systematic basis. *See Reliance Nat'l Indem. Co. v. Pinnacle Cas. Assur. Corp.*, 160 F. Supp. 2d 1327, 1331 (M.D. Ala. 2001); *see also Country Maid, Inc. v. Haseotes*, 312 F. Supp. 1116, 1118 (E.D. Pa. 1970).[5]

According to TCS, the central issues in this case will be infringement by Newegg and damages for any such infringement, as well as the invalidity of the patents in suit. [Dkt. 6, at 4.] If so, then the key witnesses in this case will be those witnesses with knowledge concerning *Newegg's* allegedly infringing activities (including its hardware, routing devices and servers) and any associated "sales." All of these witnesses are in *California*, weighing against any transfer to the District of Maryland. *See Mason v. SmithKline Beecham Clinical Labs.*, 146 F. Supp. 2d 1355, 1362 (S.D. Fla. 2001) (*quality – i.e.*, importance – of witnesses is much more significant than *quantity* of witnesses identified); *Brandon Apparel Group, Inc. v. Quitman Mfg. Co. Inc.*, 42 F.Supp.2d 821, 834 (N.D. Ill. 1999).[6]

Ultimately, TCS has done nothing in its moving papers to establish its own "inconvenience" except to offer an exaggerated list of 6-7 employee witnesses that it says it *may* call to testify on issues not even shown to be relevant in this case. Newegg, on the other hand, has established that it *expects* to call certain witnesses – all of whom live and work in California, thousands of miles from Baltimore.

Thus, at best, a transfer to the District of Maryland would merely shift any inconvenience from TCS to Newegg. Under the circumstances, TCS' motion to transfer should be denied. *See Van Dusen*,

---

[4] Under similar circumstances, in a patent infringement action brought by a Utah corporation having its principal place of business in Salt Lake City, the U.S. District Court for the Middle District of Alabama *denied* a defendant's motion to transfer the action to the Southern District of New York. The Court held that, although the defendant was a New York corporation, it also had manufacturing plants in Alabama and its witnesses were either experts or employees. *Everprest, Inc. v. Phillips-Van Heusen, Corp*, 300 F. Supp. 757 (D. Ala. 1969) (rejecting arguments that many employees in New York would have to testify concerning issues relating to the validity of the patents in suit).

[5] This Court also need not consider TCS' misplaced arguments concerning any relative convenience or inconvenience to counsel. *See Solomon v. Continental American Life Ins. Co.*, 472 F.2d 1043, 1047 (3rd Cir. 1973).

[6] Moreover, many of the patent invalidity issues are likely to raise only questions of law.

376 U.S. at 645-46 (holding that section 1404(a) calls for transfer to a more convenient forum, not one equally convenient or inconvenient); *Robinson v. Giamarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (affirming denial of motion where transfer would only shift inconvenience to plaintiff).

### 3. The Convenience of the Witnesses Favors the Current Forum.

Without presenting any admissible evidence, TCS argues that the inventors (former employees) and its own patent attorney *might* be "unwilling or unable" to testify at trial because they would rather drive to Baltimore than fly to San Francisco. This ambiguous "evidence" should be disregarded.

To be sure, TCS' moving papers mention two other third parties; however, the evidence concerning those witnesses does *not* favor a transfer to the District of Maryland. First, this district is neither inconvenient nor objectionable to the MMA's employees and members, who do *not* prefer the District of Maryland as a venue. Second, as TCS concedes, 360 Degree Mobile is located in Westlake Village, California. Clearly, transferring this action from the Northern District of California to Baltimore, Maryland would not serve the interests of any witnesses employed by 360 Degree Mobile.

In order for a movant to justify transfer based on the convenience of witnesses, the movant must support its motion *by clearly specifying* the key witnesses to be called and *particularly stating the significance* of their testimony. *Long v. Sports44.com, Inc.*, No. 8:06-CV-2384-T-27TGW, 2007 WL 3072405, at *6 (M.D. Fla. Oct. 19, 2007); *Grey v. Cont'l Mktg. Assocs., Inc.*, 315 F. Supp. 826, 831 (N.D. Ga. 1970) (movant must list names of witnesses, nature of testimony, the necessity of testimony to case, and why movant cannot properly present testimony through depositions).

Here, in the moving papers, TCS has clearly failed to satisfy this burden.[7]

### 4. The Location of Documents Does Not Favor Transfer.

Although courts have held that the location of documents and other sources of proof is a factor in the Section 1404(a) analysis, many courts have found this factor to be of less significance since most documents are now stored and/or produced electronically. *See, e.g., Mason*, 146 F. Supp. 2d at 1364.

---

[7] Newegg submits that any efforts to "cure" the deficiencies in the moving papers after the fact should be disregarded. *Griffin Indus., Inc. v. Couch*, No. 1:05-CV-0684-WSD, 2006 WL 783354, at *2 n.1 (N.D. Ga. Mar. 23, 2006) (stating that submitting supplemental affidavits with reply briefs is improper where original affidavits in support of transfer motion were deficient), *rev'd on other grounds*, *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189 (11th Cir. 2007).

Nevertheless, in the present case, Newegg has presented evidence that substantially all of its documents relating to any text messaging or location-based services are in California. TCS, on the other hand, did not even address this factor in its papers. Thus, this factor does not favor transfer.

**5. Relative Ability to Bear Expense of Change of Forum Does Not Favor Transfer.**

In this case, the two parties involved have a similar number of employees, and Newegg has shown that TCS is a highly sophisticated litigant with significant experience litigating in venues around the country. Furthermore, TCS is a large, publicly traded corporation that had total revenue of $211.5 million in its most recent fiscal year (2008). Under the circumstances, neither the movant's size nor its ability to bear the expense of litigating in this district favor a transfer to Baltimore.

**6. Trial Court Considerations Weigh Heavily in Favor of the Current Forum.**

The speed with which a case will get to trial and similar factors are valid considerations in a Section 1404(a) analysis. *See Everprest*, 300 F. Supp. at 758.

Here, TCS argues that the District of Maryland is "a more efficient docket by all key measures." This is inaccurate. In fact, any such distinction between these courts is not material. [*See* Dkt. 6, at 7 (median time from filing to disposition is 7.0 months in the District of Maryland and 7.7 months in the Northern District of California.] (*See also* Zarian Decl., Ex. 10 (time from filing to trial is 24.5 months in the District of Maryland and 25.5 months in the Northern District of California).)

There is a significant difference, however, applicable to the instant patent case. The Northern District of California is widely recognized as having a well-developed and predictable set of Patent Local Rules – initially adopted in 2000 and most recently amended in 2008. The District of Maryland, on the other hand, does not have any such rules. In a case like this, the availability of established patent local rules for the parties to follow is likely to result in a much more efficient adjudication.

Accordingly, this factor does not support a transfer of this case to Baltimore, Maryland.

## IV. CONCLUSION

For all of the foregoing reasons, and in the interests of justice, Newegg respectfully requests that the Court deny TCS' pending Motion to Transfer Venue to the District of Maryland.

DATED this 29TH day of April, 2009.

                               ZARIAN MIDGLEY & JOHNSON PLLC


                               By: /s/ *John N. Zarian*
                                  John N. Zarian
                                  Attorneys for Plaintiff Newegg Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 29th day of April, 2009, I electronically filed the foregoing document with the Clerk of the Court, using the CM/ECF system, which will automatically send email notification of such filing to all counsel who have entered an appearance in this action.

/s/ *John N. Zarian*
John N. Zarian