United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Newegg, Inc, | No. C 09-0982 JL |
| Plaintiff, | |
| v. | **TRANSFER ORDER**<br>**(Granting Docket #s 6 and 25)** |
| Telecommunication Systems, et al., | |
| Defendants. | |
| _____/ | |

**Introduction**

Plaintiff in its Complaint seeks a declaratory judgment that its products do not infringe Defendants' patents, pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201 and 2202, conferring original federal jurisdiction. All parties have consented to this Court's jurisdiction pursuant to 28 U.S.C. §636(c). Defendant moves to transfer venue from the Northern District of California to the District of Maryland. The matter came on for hearing and was submitted following oral argument. Michael E. Dergosits, DERGOSITS & NOAH, LLP, appeared for Plaintiff. John N. Zarian, ZARIAN MIDGLEY & JOHNSON PLLC, appeared for Defendants.

The Court carefully considered the moving and opposing papers, the arguments of counsel, the applicable case law and the record in this case and hereby grants the motion. When the Court weighs the factors articulated by the Fifth Circuit in the case of *In re*

1    *Volkswagen of America, Inc.* 545 F.3d 304 (5TH Cir. 2008), the Court concludes that venue in Maryland would be more convenient for the parties and more important, the witnesses. These factors are: (1) the plaintiff's initial choice of forum (which is given weight, but not as much weight as in a motion to dismiss for forum non conveniens); (2) convenience of the parties; (3) convenience of the witnesses and their availability through compulsory process (this is the most important factor and the one which weighs most heavily in this case, especially regarding third parties and the inventors of the patents-in-suit); (4) location of documents and other sources of proof; (5) relative ability of the parties to bear the expense of the forum change; and (6) trial efficiency and expense to the judicial system. *In re Volkswagen of America, Inc., Id.* at 315. This refines the standard adopted in the Ninth Circuit in 1986 in the *Decker Coal* case: The court in that case considered: 1) plaintiff's choice of forum, 2) convenience of the parties, 3) convenience of the witnesses, 4) ease of access to the evidence, 5) familiarity of each forum with the applicable law, 6) feasibility of consolidation of other claims, 7) any local interest in the controversy, and 8) the relative court congestion and time of trial in each forum. *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir.1986).

## BACKGROUND

Newegg filed this action against TCS for a declaration of noninfringement and invalidity of two TCS-owned patents. The earlier of the two patents (No. 6,891,811) was filed in 2000, and the later (No. 7,355,990) was filed in 2005. The '990 patent is based on the '811 patent, and claims priority to its 2000 filing date (Declaration of Elliott Hamilton at ¶ 2).

This case involves technological issues involving what are known as "short codes." Short codes are usually short, four-to-six digit numbers that owners of mobile devices (such as cell phones) may use to address text messages to companies or individuals who have registered the short codes. The patents describe the example of texting the word "menu" to 4636, where 4636 is an example short code.

## ANALYSIS

Analyzing TCS' motion under the relevant case law, the Court finds that Newegg's opposition does not challenge the facts which merit transfer to the District of Maryland:

- Newegg's declaratory judgment action for a finding of patent noninfringement and invalidity could have been brought in the District of Maryland because TCS is subject to personal jurisdiction where it maintains corporate headquarters, and venue is proper there;
- Important TCS third-party witnesses do not reside within the subpoena power of this judicial district;
- No operative facts occurred in this judicial district - The District of Maryland is the most convenient forum for the most witnesses, and particularly the third-party inventors (the most important witnesses); and
- Newegg would be inconvenienced in either forum, but only the District of Maryland minimizes TCS's inconvenience.

Instead, Newegg relies on numerous points that are inapposite to the convenience or justice factors under 28 U.S.C. § 1404(a).

**I.      Newegg's facts do not help the Court analyze § 1404(a)**

Newegg's opposition is unhelpful on the question of whether this declaratory judgment action should be transferred to the District of Maryland. In arguing that TCS is subject to personal jurisdiction in this District, Newegg disregards the pertinent question, which is whether Newegg could have brought the action in the transferee court. TCS is also clearly subject to personal jurisdiction in the District of Maryland, the location of TCS' corporate headquarters. Moreover, even in focusing upon TCS's contacts with this District, Newegg cannot contradict the conclusion that no operative facts relevant to this litigation took place in this District.

The fact that TCS is registered to do business in California, has been here continuously and systematically, and that its Oakland office might be hiring (Docket # 16 at 3, 8) speaks only to an issue that TCS does not dispute here – personal jurisdiction. TCS has 600 employees, 20-28 of whom work in Oakland. Since a transfer analysis under 28

1  U.S.C. § 1404(a) presumes personal jurisdiction over TCS in the transferor Court, these
2  facts and TCS' purported admission of proper venue here (Docket # 16 at 5), are not
3  helpful to this Court in analyzing the convenience or interests of justice factors under §
4  1404(a). Newegg also invokes flawed personal jurisdiction arguments going in the other
5  direction. Namely, Newegg suggests that transfer is forbidden because the District of
6  Maryland supposedly lacks personal jurisdiction over declaratory judgment plaintiff Newegg
7  (Docket # 16, at 2, item 7). This is not the law. Personal jurisdiction is only a portion of the
8  analysis and not dispositive. This argument by Newegg is therefore irrelevant to a §
9  1404(a) analysis.

10  Newegg is unable to establish that any operative facts relevant to this action took
11  place in this District. For example, Newegg highlights TCS's Oakland office space (Docket
12  # 16, at 2-3) – but TCS presented uncontradicted evidence (Docket # 7, Hamilton Decl. ¶ 4)
13  that the office and its personnel have  nothing to do with the operative facts of this case.
14  (The Oakland office space came into TCS' possession through its acquisition of a company
15  called Kivera. The Oakland office focuses on location-based applications and geo-spatial
16  databases - these bear no relationship to the messaging technology at issue in this lawsuit.
17  There are no potential witnesses in this office. )

18  Newegg also calls TCS a "sophisticated litigant" (Docket # 16, at 3). Even if this
19  were a factor, Newegg only cites four litigations by TCS over the past decade – a recent
20  patent infringement win near TCS's home turf; a Wisconsin employment case that the court
21  dismissed after TCS moved to transfer; a securities defense pending since 2001 in New
22  York (a quick train ride from Baltimore); and a short-lived discovery matter where TCS (a
23  subpoenaed non-party) produced non-confidential documents from Maryland to Texas
24  under a subpoena that for unknown reasons issued out of the Eastern District of California.
25  This subpoena anomaly in the Eastern District was explained by TCS' outside
26  counsel, James R. Burdett, in his Declaration.  For cost-saving purposes, TCS chose not to
27  move to quash the highly irregular subpoena. See Burdett Decl. ISO motion to transfer
28  venue at ¶ 2. While TCS did produce some discovery under that subpoena, none of it was

sourced from, delivered to, or had any connection with, the Eastern District of California (or anywhere in California). Burdett Decl. ¶ 3. The only reason TCS participated in the Eastern District of California was to have the issuing court enter the confidentiality protective order – an order that TCS never invoked because no confidential documents were ever produced. Burdett Decl. ¶ 4.

Newegg fails to explain how such a limited history in federal court actions might impact the only significant questions before this Court – is the District of Maryland a more convenient forum, and does it better serve the interests of justice, than the Northern District of California? Events in other cases logically have nothing to do with the location of the witnesses and the parties with respect to this judicial district.

**II. Transfer to Maryland would maximize net convenience, not merely shift inconvenience to Newegg**

Newegg argues that transfer would merely shift inconvenience from one party to the other (Docket # 16, at 6, 8). This is incorrect, for two reasons.

First, Newegg and its witnesses already reside hundreds of miles away from the Northern District of California. Newegg would measure its own relative inconvenience by the difference between one flight (Los Angeles to San Francisco) and another (Los Angeles to Baltimore.) By contrast, transfer to Maryland would eliminate tremendous hardship for TCS. Transfer means the difference between an inexpensive and efficient drive to a Baltimore courtroom, versus flying and lodging almost as far across the country as one can go. Only by transferring to Maryland can the Court maximize the overall gain in convenience to the largest number of the parties and witnesses. Even if Newegg were to experience a slight additional inconvenience to litigate in Maryland, the strong gain in convenience for TCS more than counterbalances it, particularly where, as here, the litigation has absolutely no connection to this District.

Second, even at the threshold, Newegg fails to present evidence that would allow the Court to consider its inconvenience arguments. Newegg has no colorable evidence of inconvenience. Newegg's declarant, Mira S. Wolf, names James Wu, Chief Technology

Officer (CTO"), Michael Amkreutz (VP, Product Management) and Bernard Luthi (VP Merchandising) as the party-witnesses whose convenience it seeks to protect (Docket # 18, ¶ 12 - Decl. Of Mira Wolff ISO Pltf Opp. To motion to transfer venue). But Ms. Wolf does not provide any specifics about the substance of their expected testimony. This makes it impossible for this Court to weigh the relative importance of their testimony.    Given the total absence of specificity on their areas of testimony, the record does not support that Newegg's named employees would be called as trial witnesses on any relevant issue. However, TCS has addressed the relative convenience factors for persons who would likely be called at trial – and the vast majority of them live in the Annapolis, Maryland area.

Newegg's hearsay objection to TCS's evidence (Docket # 16, at 5 n.1) (based on Mr. Hamilton conveying the witnesses' desires to the Court rather than the witnesses themselves) lacks merit. *Laitram Corp. v. Hewlett-Packard Co.*, 120 F. Supp. 2d 607, 610 n.2 (E.D. La. 2000) (holding reliable hearsay statements concerning witness inconvenience may be considered on a transfer motion). It is not clear what Newegg hopes to gain by making such an objection anyway. The Court may take judicial notice that third-party Annapolis-based inventors Smith and Wilson, probably the two most important witnesses, would be inconvenienced to testify at trial in San Francisco. *Cf. Costco Wholesale Corp. v. Liberty Mutual Insurance Co.*, 472 F. Supp. 2d 1183, 1194 (S.D. Cal. 2007) (overruling hearsay objection on § 1404(a) motion, noting the "only pertinent consideration" is the unchallenged fact that one forum would put the third-party witnesses outside the court's subpoena power.)

TCS also observes the irony of Newegg's hearsay objection when Newegg itself presents hearsay in the same manner for the same purpose within its Delacourt Declaration, Docket # 19. ( "No MMA member has expressed any concerns to me regarding any inconvenience associated with the current venue of this case, nor has any member expressed a preference for the state of Maryland as a venue. In the unlikely event it becomes necessary for any MMA 'employees' to testify at the trial of this case, as outside

general counsel, I can represent that the MMA does not prefer the District of Maryland as a venue. Furthermore, testifying in th Northern District of California would not pose any undue burden or inconvenience, as compared with the district of Maryland." (*Id.* at ¶7 and 8)

And, while TCS states the subject areas of East Coast witness testimony, Newegg keeps the Court in the dark about what kind of evidence Messrs. Wu, Amkreutz or Luthi might present at trial.

### III. No witness resides in this judicial district - Newegg's Evidence and Witnesses are in Southern California

Newegg, by counsel Mira Wolff, argues that significant evidence and witnesses are located in California, albeit in the Central District, and it would be much more convenient for Newegg to pursue this lawsuit in the Northern District of California than in the District of Maryland -

She argues that substantially all of Newegg's physical hardware, routing devices, web applications, systems and servers are located in the State of California. Newegg does not maintain any equipment or contract with any application providers in Maryland.

Furthermore, substantially all of the documents relating to any text messaging or location-based services involving Newegg are located in City of Industry, California. Newegg does not maintain any documents in Maryland that are related to any such technologies or its products.

Newegg is not aware at this time of the need to call any TCS employees as witnesses. To the extent any such employees are identified and determined to be located in Maryland, Newegg is willing to take their depositions in Maryland.

Based on the information currently available, however, Newegg expects to call certain of its own employees as witnesses in this matter. All of these employees work in City of Industry, California, and reside in the state of California, including:

   a.   James Wu, Chief Technology Officer
   b.   Michael M. Amkreutv, V.P. Product Management
   c.   Bernard Luthi, V.P. Merchandising

In addition, Ms. Wolff, as Senior Corporate Counsel, is one of the attorneys responsible for this litigation. She works in City of Industry, California, and lives in the Central District of California. A trial in Baltimore, Maryland would be extremely disruptive for her, and for the California employees listed in the foregoing paragraph, compared to a trial in the Northern District of California – which is much closer to City of Industry and much more accessible from there than is the District of Maryland. Indeed, there are many, many flights every day (each slightly more than one hour) between Southern California and the Bay Area. (Just visualize the Southwest Airlines commercial with flight after flight after flight virtually around the clock).

She understands that TCS has represented Newegg has "about 1500 employees." In fact, Newegg and its subsidiaries have approximately 950 employees in the United States, and the overwhelming majority of them are located in California.

### A. TCS' evidence and witnesses, including third parties, are outside California, all on the East Coast

Elliott Hamilton, TCS' Senior Director of Strategic Planning, describes TCS office locations, number of employees and the identity and location of its potential witnesses in this case. (Declaration of Elliott Hamilton ISO motion to transfer venue). TCS expects that at trial it may call objective, nonbiased witnesses to educate the Court and the jury on the technical and operational aspects of common short codes. These witnesses will be one or more employees of the nonprofit technical group that administers all United States-based Common Short Codes. This organization is called the CTIA (formerly, the "Cellular Telecommunications & Internet Association"). The CTIA's offices are in Washington, D.C., a convenient drive from and within the subpoena power of the District of Maryland (Hamilton Decl. ¶ 7).

Other third party witnesses TCS expects that it may call at trial include employees of the Mobile Marketing Association ("MMA"). They would testify on issues of damages related to the popularity and usefulness of the patented technology. The MMA is located in New York City, much closer to the District of Maryland than to the Northern District of California (Hamilton Decl. ¶ 8).

TCS may also call third party witnesses from a company called 360 Degree Mobile ("360"). TCS believes 360 assisted Newegg with its infringement. 360 is located outside the Northern District of California, in Westlake Village, California (Central District) (Hamilton Decl. ¶ 9).

**B.     Party Witnesses**

TCS may call certain of its own employees on issues related to their witnessing the conception, and participating in the development of, the patented inventions. All of them work in Annapolis and reside in the District of Maryland (Hamilton Decl. ¶ 10). These include one or more of:

- Mike Richardson (VP of Messaging and a TCS employee in the messaging group in 2000)
- Mark Titus (Sr. Director of Messaging and a TCS employee in the messaging group in 2000)
- Joe Pohutsky (Senior Director of Carrier Software and a TCS employee in the messaging group in 2000)
- Tim Stotesbery (Director of Network Applications and a TCS employee in the messaging group in 2000)
- Drew Morin (CTO and a TCS employee involved in the messaging development efforts in 2000)
- Tim Lorello (CMO and a TCS employee involved in the messaging development efforts in 2000).

TCS may also call its Senior Director of Strategic Planning, Elliott Hamilton, to testify on damages issues related to patent licensing at TCS. Mr. Hamilton works in Annapolis and resides in the District of Maryland (Hamilton Decl. ¶ 11).

TCS will call Newegg employees who have knowledge of infringement and damages issues. On information and belief, all potentially relevant Newegg employee-witnesses are located outside the Northern District of California, likely in the Central District of California.

### III. Standard for transferring venue is less strict than dismissal for forum non conveniens

Newegg's opposition invites error with misstatements of the law. For example, Newegg cites the Supreme Court case *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947) for the proposition that "transfer is justified only in 'rather rare cases.'" (DI 16, at 6). But *Gulf Oil* addressed a different matter – not transfer but dismissal under the doctrine of forum non conveniens. Courts (including the Supreme Court) have long recognized that dismissal under that doctrine is rare, whereas courts have much broader discretion to transfer under § 1404(a). *Norwood v. Kirkpatrick*, 349 U.S. 29, 31 (1955) ("The forum non conveniens doctrine is quite different from Section 1404 (a). . . .[The words of Section 1404(a)] should be considered for what they say, not with preconceived limitations derived from the forum non conveniens doctrine.") Newegg ignores the *Norwood* case, which explicitly states that "Congress, by the term 'for the convenience of the parties and witnesses, in the interest of justice,' intended to permit courts to grant transfers upon a lesser showing of inconvenience. . . . [T]he discretion to be exercised is broader." Id. at 32. Thus, transfers under § 1404(a) are exceedingly common, not rare.

Notably missing from Newegg's papers is a single case law citation where a court denied a transfer motion away from a forum with no witnesses and no connection to the charge of infringement.  The closest Newegg comes is its citation to *Everprest, Inc. v. Phillips-Van Heusen Corp.*, 300 F. Supp. 757, 759 (D. Ala. 1969) (DI 16, at 7 n.4). In Everprest, the court specifically held that it was "clear that the infringement charged is connected with this district." *Id.* Thus, Newegg's champion case is distinguishable. In addition, the only witnesses mentioned by the court were party-witnesses, whereas here, many non-party witnesses reside in Maryland.

Since the case law uniformly counsels transfer under these identical circumstances – i.e., where there are no witnesses in the forum, and the operative facts all occurred elsewhere – Newegg cannot seriously dispute that TCS made a strong showing that transfer to the District of Maryland is in the interest of justice and serves the overall convenience of the parties and the witnesses.

### IV. Important third parties are within subpoena power of the district of Maryland

TCS explained in its opening brief that relevant third-parties are on the East Coast, including the inventors Smith and Wilson (in Annapolis, Maryland), attorney Bollman (in Washington, D.C.), the CTIA (in Washington, D.C.), and the Mobile Marketing Association (MMA) (in New York City). The location of third-party witnesses is usually the most important convenience and justice factor of all. That is because courts recognize that reading a deposition at trial – even a videotaped deposition – is no substitute for the advantages to the parties, the judge and the jury of having important witnesses appear live at trial. *Gulf Oil*, 330 U.S. at 511 ("to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to the court, jury or most litigants."); see also *Costco*, 472 F. Supp. 2d at 1194 ("Offering unavailable witnesses' testimony via videotaped deposition testimony is disfavored . . ."); *Laitram*, 120 F. Supp. 2d at 610 ("It is essential to the cause of justice itself. Deposition testimony . . . is a sterile, inadequate substitute for live testimony on key issues."). Here, the Court may easily reject Newegg's arguments seeking to minimize the significance of TCS's East Coast third-party witnesses.

At the outset, TCS notes that Newegg does not address (much less refute) TCS's evidence about the CTIA and its staff (Docket # 7, Hamilton Decl. ¶ 7). This organization has important trial witnesses, namely on the technology surrounding SMS short code deployment.

For purposes of this motion, Newegg effectively concedes that the CTIA are important third party witnesses, found within the subpoena power of the District of Maryland but not of the Northern District of California. Newegg does not, and cannot, dispute that inventors Smith and Wilson would be key witnesses at trial. Instead, Newegg tries to distract from that by misstating what they said.

Contrary to Newegg's argument, the inventors did not make the "remarkable" statement that they would of a certainty be "unwilling to testify at trial in this California patent case" (Docket # 16, at 5, emphasis in original), but instead made the highly credible

1  statement that it would be a great disruption for them to travel to trial if it is in San
2  Francisco (Docket # 7, Hamilton Decl. ¶ 5). Namely, they might be unwilling or (critically)
3  unable to do so when the time comes, and it would be far more convenient for them to
4  drive to Baltimore instead (*Id.*).

5  By transferring this case to the District of Maryland, this Court will serve the interests
6  of justice by ensuring that such testimony is live and in-person. See *Gulf Oil*, 330 U.S. at
7  511.

8  Against TCS's evidence, Newegg supplies a single piece of evidence – the
9  Declaration of Scott D. Delacourt, the outside general counsel for the MMA. Mr. Delacourt
10 testifies that MMA employees would not prefer the District of Maryland over the Northern
11 District of California (Docket # 19, Delacourt Decl. ¶ 8). What Mr. Delacourt does not say
12 might be more significant than what he does – he does not say the MMA prefers the
13 Northern District of California. Thus, at most, Mr. Delacourt's declaration expresses
14 neutrality.  He states that no MMA member has expressed any concerns regarding
15 inconvenience of the Northern District of California, or preference for the District of
16 Maryland (Docket # 19, Delacourt Decl. ¶ 7). This statement is wrong because TCS, as an
17 MMA member, has done exactly that through the filing of this motion.

18 Newegg presents no evidence that the remaining third-party – 360 Degree Mobile –
19 has any problem presenting its one or two potential trial witnesses in the District of
20 Maryland (see Docket # 16, at 9). While Newegg makes an attorney-argument that
21 "transferring . . . would not serve the interests of any witnesses employed by 360 Degree
22 Mobile" (id.), the absence of any declaration from 360 Degree Mobile is telling. If Maryland
23 were truly inconvenient for it, surely 360 Degree Mobile, as Newegg's vendor, would have
24 offered a declaration saying so. The only California-based third-party that both sides agree
25 might have relevant trial testimony did not state any objection to transfer to (and thus trial
26 in) the District of Maryland. Their disinterest makes sense, as 360 Degree Mobile is already
27 an airline flight away no matter what courtroom takes this case.

28 **V.    Other factors are neutral or support transfer**

1    Newegg acknowledges that the location of documents is a less significant factor (DI
2    16, at 9). Indeed, this factor would be neutral, or slightly favor TCS. Newegg concedes it
3    has documents outside this judicial district (although somewhere in California), and
4    naturally, TCS has documents in Maryland. Newegg is incorrect, though, to argue that TCS
5    "did not even address this factor in its papers." As TCS stated in its motion (Docket # 6, at
6    11), "while Newegg documentation might currently exist in California, it will likely become
7    digitized and manipulated electronically for purposes of this case no matter where trial is
8    located."

9    The remaining factors are not neutral at all, since they strongly favor transfer to the
10   District of Maryland. For example, the interest of justice is best served by having the forum
11   court be the court that decides any major discovery disputes in a case. The federal court
12   system functions most effectively if remote courts do not have to duplicate the work of a
13   forum court. If this case is not transferred to Maryland, the Northern District of California
14   would not preside over most hypothetical discovery disputes, particularly concerning the
15   important third parties, since they are all located outside the Northern District of California.

16   Only the District of Maryland offers a forum that would minimize the chances that a
17   remote court would have to educate itself on the issues in this case in order to adjudicate
18   discovery disputes. In addition, TCS previously pointed out that by all major metrics, the
19   District of Maryland has the least docket congestion and the quickest median time to
20   disposition or trial.

21   Newegg cannot refute these facts, but instead cites a different (less current) data set
22   to argue that one of these metrics did not used to be so favorable to transfer (Docket # 16,
23   at 10). Namely, Newegg argues that the median time to trial used to be only one month
24   slower here than in Maryland, so the Court should supposedly disregard that now this Court
25   is 8 months slower. It is hard to grasp what Newegg hopes to gain by pointing out that this
26   Court's congestion has gotten worse, not better. Newegg's "interest of justice" data actually
27   support transfer to the District of Maryland.

28   Finally, citing no authority, Newegg argues that this Court should keep an otherwise
inconvenient case because this Court makes its local patent rules available to patent

litigants (Docket # 16, at 10). If anything, the case at bar might present a unique instance of a damage claim so potentially small (as low as $5,000 – see letter attached to Docket # 1- - TCS attorney's letter offering Newegg royalty terms of $5,000 for a 3-year license) that strict application of the local patent rules would create unexpected inefficiencies, and TCS would seek relief from strict application of the rules under Patent Local Rule 3-1 (providing for "Disclosure of Asserted Claims and Preliminary Infringement Contentions" and claim charts).

## CONCLUSION

For all the above reasons, Defendant's motion to transfer venue to the District of Maryland is granted.

IT IS SO ORDERED.

DATED: June 23, 2009

_____
James Larson
Chief Magistrate Judge

G:\JLALL\CHAMBERS\CASES\CIVIL\09-0982\Order Grant 6.wpd